IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE ERNESTO FERNANDEZ-TORRES his spouse ROSA ACOSTA-LUCCA and the conjugal partnership comprised by them<br><br>Plaintiffs<br><br>vs<br><br>ANTONIO M. SAGARDIA, in his individual and official capacities of SECRETARY OF JUSTICE OF THE COMMONWEALTH OF PUERTO RICO<br>VICTOR CARBONELL-RAMIREZ, in his individual and official capacities of DIRECTOR OF THE BUREAU OF SPECIAL INVESTIGATIONS ("NIE"),<br>EDWIN CARRION-SOTO, in his individual and official capacities as AUXILIARY DIRECTOR OF THE ALBERGUE DE PROTECCION A VICTIMAS Y TESTIGOS;<br>JOSE O. FIGUEROA-RODRIGUEZ, in his individual and official capacities as DIRECTOR OF THE ORGANIZED CRIME DIVISION;<br>WILLIAM MACHADO-ALDARONDO, in his individual and official capacities of AUXILIARY SECRETARY OF HUMAN RESOURCES<br><br>Defendants | CIVIL 09-1858CCC |

## OPINION AND ORDER

Plaintiff José Ernesto Fernández Torres ("Fernández"), and his wife, Rosa Acosta-Lucca, have brought suit under 42 U.S.C. §1983 against Puerto Rico's Secretary of Justice, Antonio M. Sagardía, the Director of the Bureau of Special Investigations ("NIE"),Víctor Carbonell-Ramírez, the Auxiliary Director of the "Albergue de Protección a Víctimas y Testigos", Edwin Carrión-Soto, the Director of the Organized Crime Division, José O. Figueroa-Rodríguez, and the Auxiliary Secretary of Human Resources, William Machado-Aldarondo, Fernández, a career officer at the Bureau of Special Investigations ("NIE"), alleges he "was stripped of his supervisory functions, investigative functions, and of the authority, responsibilities and duties inherent to his career position . . . and has been

CIVIL 09-1858CCC                                     2

subjected to constant harassment and humiliation," (Complaint, docket entry 10 at p. 2) only because of his "political affiliation." Id. He also avers that defendants violated his "rights under the First Amendment and Due Process Clause of the Constitution of the United States, as well as under the laws and Constitution of Puerto Rico." Id. Before us is defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted (**docket entry 10**) and plaintiffs' opposition (docket entry 16).

Defendants aver that the complaint contains only conclusory allegations without factual foundation which do not rise above the speculative level, thereby failing to state a constitutional claim regarding the First Amendment cause of action based on political discrimination. Defendants also aver that the due process and equal protection claims are merely mentioned in passing as part of the first cause of action without a single factual statement as to how plaintiff's rights under these constitutional provisions were violated. At pp. 2-3 of their opposition, plaintiff make reference to what he deems to be "facts to be admitted by this Court." We must at the outset note that other than the stated affiliation of plaintiff and defendants, the remaining references regarding a hostile work environment, defendants' attempting to justify his "dismissal" and having unidentified "individuals of the NPP . . . assigned to supervise and report on plaintiff's activities" are matters that are not part of the complaint. By the same token, nor is the statement made at p. 11 of the opposition that "plaintiff was recently terminated" from his employment by defendants a part of the complaint.

The Fed.R.Civ.P. 8 pleading standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). But "the tenet that a court must accept as true all of the

CIVIL 09-1858CCC                                              3

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir.2009) (quoting Iqbal, 129 S.Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, at 1949. Thus, from the well-pleaded, non-conclusory, and factual allegations, the Court must be able to draw the reasonable inference that the defendant is liable for the misconduct alleged. Twombly's plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, *supra*, at 1949. The Court is not bound to accept as true "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, *supra*, at 1949 (quoting Twombly, *supra*, at 557). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Twombly, *supra*, at 545.

The following are the relevant allegations for purposes of the Court's analysis of the sufficiency of plaintiffs' political discrimination claim.

In allegations 7 through 11, plaintiffs identify each of the defendants as "a member of the N[ew] P[rogressive] P[arty]."

> 12. Plaintiff is an active member of the Popular Democratic Party (hereinafter "PPD"), fact known to defendants at all times relevant to this action.

As to defendant Antonio M. Sagardía, Secretary of Justice, Commonwealth of Puerto Rico:

> 19. On February 9, 2009 late in the afternoon, Plaintiff was tendered a letter dated February 5, 2009, from defendant Sagardía de Jesús, assigning him as Supervisor of the Operations Section of the NIE's Shelter. According to the letter, Plaintiff's assignment was effective on February 9, 2009 and he had to report to Ezequiel Carrasquillo González (hereinafter "Carrasquillo González") who at that time was the Auxiliary Director of the Shelter and would provide him instructions in connection with his new duties.
>
> ....

CIVIL 09-1858CCC                                        4

> 34.  On April 30, 2009, attorney Carlos Rodríguez García sent a letter to Sagardía de Jesús on behalf of plaintiff Fernández Torres, in which he advised him that a confident by the name of Jesús M. Santiago Serrano a/k/a "Gury" was being housed at the Shelter; that this confident had been used n drug related transactions while the Plaintiff occupied the position of Director of the Investigative Division against Organized Crime; and he explained the reasons why there was a concerted plan to fabricate a criminal and administrative case against the Plaintiff with the use of the confident's testimony.  Once again, a request was made for Plaintiff's transfer to the Interpol Division or to any Prosecutor's Office inasmuch as Plaintiff will be eligible for retirement in two years.

(Complaint, docket entry 1.)

As to co-defendant Víctor Carbonell-Ramírez, Director of the Bureau of Special Investigations (NIE):

> 20.  Upon receiving this letter,[1] Plaintiff asked Figueroa what had been the reasons for the change in assignment.  Figueroa instructed the Plaintiff to discuss the matter directly with co-defendant Carbonell Ramírez.
>
> 21.  On that same date, Plaintiff attempted to meet with Defendant Carbonell Ramírez, but was advised by Agent Crespo that Carbonell Ramírez would meet with him "at some other time."
>
> ....
>
> 26.  On March 2, 2009, Carrasquillo met with the Plaintiff and advised him, among other things, that he could not give instructions to Agent Edwin Carrión, who is the Special Agent I who is in charge of supervising the Security Section of the Shelter, and that he had to return the rifle assigned to him per Carbonell Ramírez' instructions.
>
> ....
>
> 28.  On March 12, 2009, Plaintiff sent a letter to defendant Carbonell Ramírez in which he stated that as of that date, he had not been provided with the reasons for his assignment to the Shelter.  In said letter, Plaintiff advised Carbonell Ramírez of the reasons why he felt he was being harassed and discriminated against on account of his political affiliation.
>
> ....
>
> 35.  On June 5, 2009, Machado Aldarondo sent a letter to Plaintiff in response to Plaintiff's April 13, 2009 letter. By said letter, Machado Aldarondo advised the Plaintiff that he had held a meeting on April 2, 2009, with Carbonell

---

[1] Referring to the February 5, 2009 letter mentioned at paragraph 19, through which defendant Sagardía assigned plaintiff as Supervisor of the Operations Section of the NIE's shelter.

CIVIL 09-1858CCC                                              5

>    Ramírez, Arlene M. Gardón Rivera, Sub director of the NIE and with Associate Director José L. Jiménez Domenech to discuss Plaintiff's transfer. According to Machado Aldarondo, on said meeting Carbonell Ramírez indicated that in his current assignment Plaintiff was carrying out several duties including: supervising a group of agents and developing work plans. Accordingly, plaintiff was advised that the Secretariat felt that no illegality was committed by transferring the Plaintiff to the position of Supervisor of the Shelter.

(Complaint, docket entry 1.)

As to co-defendant José O. Figueroa-Rodríguez, Director of the Organized Crime Division:

>    16. On January 28, 2009, effective date of plaintiff's reinstatement to his career position as Inspector, Plaintiff met with defendant Figueroa to ask for, and discuss his reassignment to the post of Supervisor of the Drug Enforcement Section of the DICCO, which was the job to which plaintiff had been assigned immediately prior to his appointment as Auxiliary Director. As of January 28, 2009, the Supervision of the Drug Enforcement Section of the DICCO had been assigned to a person occupying a position of Agent II. During the meeting, Figueora advised the plaintiff that he would prepare Plaintiff's designation letter and that he would call a meeting with the personnel assigned to this section to advise them of Plaintiff's designation.
>
>    17. On January 29, 2009, Figueroa met with the Plaintiff and tendered him a letter from the former Director designating him Supervisor of the Drug Enforcement Section of the DICCO. Nevertheless, the referenced letter contained a handwritten note from Figueroa in which he stated that he had discussed Plaintiff's designation with Carbonell Ramírez who in turn advised him that he had no knowledge of the designation and that he would consult the matter with Human Resources. Figueroa also indicated that the assignment was still being evaluated.
>
>        ....
>
>    20. Upon receiving this letter,[2] Plaintiff asked Figueroa what had been the reasons for the change in assignment. Figueroa instructed the Plaintiff to discuss the matter directly with co-defendant Carbonell Ramírez.

(Complaint, docket entry 1.)

As to co-defendant Edwin Carrión-Soto, Auxiliary Director of the "Albergue de Protección a Víctimas y Testigos:"

>    26. On March 2, 2009, Carrasquillo met with the Plaintiff and advised him, among other things, that he could not give instructions to Agent Edwin Carrión, who is the Special Agent I who is in charge of supervising the Security Section of the Shelter, and that he had to return the rifle assigned to him per Carbonell Ramírez' instructions.

---

   [2] See note 1, supra.

CIVIL 09-1858CCC                                   6

> ....
>
> 37.  Moreover, since his appointment as Auxiliary Director of the Shelter, Carrión Soto has consistently consulted Agent Figueroa in connection with matters that fall within the duties of Plaintiff's post and has let employees at the Shelter know that Plaintiff is not authorized to make decisions. Carrión Soto has expressed that the Supervisor of the Shelter's Security Section is the person in charge whenever he is not present; disregarding that Plaintiff occupies a superior hierarchy career position.

(Complaint, docket entry 1.)

As to co-defendant William Machado-Aldarondo, Auxiliary Secretary of Human Resources:

> 29.  On that same date,[3] Plaintiff also met with Machado Aldarondo to inquire about the reasons for his assignment to the Shelter and discuss his work situation. At that time, Machado Aldarondo left a message to Carbonell Ramírez to obtain information in connection with this matter.
>
> 30.  On April 13, 2009, Plaintiff sent a follow up letter to Machado Aldarondo in connection with his discriminatory transfer. In said letter, Plaintiff reiterated that his transfer was discriminatory and that he had not been provided adequate notice of the transfer.
>
> ....
>
> 33.  Most importantly, in his April 13, 2009 letter to Machado Aldarondo, Plaintiff reiterated that he was not interested in the Auxiliary Director of the Shelter position, nor did he aspire to being designated as an Agency Director. Rather, Plaintiff offered two alternatives, to wit: (a) that he be assigned to a Prosecutor's office, or (b) that he be assigned to work under the supervision of an Inspector.
>
> ....
>
> 35.  On June 5, 2009, Machado Aldarondo sent a letter to Plaintiff in response to Plaintiff's April 13, 2009 letter. By said letter, Machado Aldarondo advised the Plaintiff that he had held a meeting on April 2, 2009, with Carbonell Ramírez, Arlene M. Gardón Rivera, Subdirector of the NIE and with Associate Director José L. Jiménez Domenech to discuss Plaintiff''s transfer. According to Machado Aldarondo, on said meeting Carbonell Ramírez indicated that in his current assignment Plaintiff was carrying out several duties including: supervising a group of agents and developing work plans. Accordingly, Plaintiff was advised that the Secretariat felt that no illegality was committed by transferring the Plaintiff to the position of Supervisor of the Shelter.

(Complaint, docket entry 1.)

---

[3]  Referring to March 12, 2009.

CIVIL 09-1858CCC					7

>	As to all defendants:
>
>	36. Plaintiff has been stripped of his corresponding responsibilities and duties as an Inspector of Special Investigations of the NIE, as well as the supervisory duties inherent to his career position. Furthermore, the initiatives taken by him to develop and establish work plans at the Shelter have been disallowed by defendants.
>
>	....
>
>	38. Furthermore, Plaintiff has been denied the payment of mileage and stipends (dieta y millaje) although he is entitled to such payments and his actions have been scrutinized by Defendants to fabricate a disciplinary case against him.
>
>	39. Plaintiff believes there is a concerted plan by the Defendants to seek his removal from his career position as Inspector of Special Investigations. His transfer and reassignment to the Shelter, the stripping of the inherent functions of his career position, and the constant humiliations Plaintiff has been subjected to, are part of that overall plan.
>
>	40. The removal of functions and authority, and the unequal treatments Plaintiff has been subject[ed] to, are all motivated by political animus.
>
>	....
>
>	42. At all times, all of the actions taken by defendants have been done in conjunction with each other, in a full fledged conspiracy to discriminate against plaintiff. Each of these defendants individually and all of them in conspiracy, acting under color of law, have basically ignored Plaintiff's permanent career employment rights, thus purposely taking, promoting, allowing, or tacitly acquiescing to the adverse employment actions taken against him on the sole basis of his known political affiliation to the PDP, and in obvious violation to his acquired rights under Puerto Rico Law and the protections afforded to him by the Constitution.

(Complaint, docket entry 1.)

The political discrimination claim is essentially anchored on the conspiracy allegations found in paragraphs 39, 40 and 42, where he speaks of a concerted plan, an overall plan and a full-fledged conspiracy to discriminate against him. At paragraph 42 he adds that each of these defendants individually, and all of them in conspiracy, have acted under color of law to ignore his permanent career employment rights, acquiescing on adverse employment actions solely because of his political affiliation. None of the prior allegations suggest, let alone make plausible, the existence of a conspiracy among the defendants. There are

CIVIL 09-1858CCC                                      8

scattered and fragmented allegations of different actions or inactions of the several defendants, meetings and letters, none of which add up or lend support to the existence of a conspiracy. The last paragraph of the complaint contains generic assertions of conspiratorial actions, which are conclusory allegations for nowhere does the complaint furnish any factual basis to draw the reasonable inference that the defendants, all of them, illegally agreed to deprive plaintiff of his constitutional rights under the First Amendment. One would have to speculate on what the defendants supposedly agreed on, and where and when such an agreement was reached, for none of the preceding allegations give a hint of the concerted overall plan and full-fledged conspiracy which allegedly existed. Simply stated, the allegations of conspiracy in this case never met the Twombly plausibility standard for they are simply bare assertions devoid of "further factual enhancement" which the Court is not bound to accept as true.

   The remaining allegations of the complaint, which all precede those related to the conspiracy theory, point to nothing more than that the plaintiff and the defendants belonged to opposing political parties and that he was unfairly treated in his employment after he was returned to his career status subsequent to a change of administration. Merely "juxtaposing a protected characteristic--someone else's politics--the fact that plaintiff was treated unfairly" is not enough to establish politically-based discriminatory animus. Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000) (citing Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 58 (1st Cir. 1990).

   Furthermore, a review of the complaint reflects that there is nothing in it that would factually support a due process violation or an equal protection claim beyond a mere passing reference to them in the first cause of action. Plaintiff having failed to provide sufficient factual content to allow the drawing of reasonable inferences that the defendants are liable to him for the misconduct alleged, the Court finds that the complaint fails to state a claim to

CIVIL 09-1858CCC                                      9

relief that is plausible on its face on those two claims.  Thus, all of plaintiffs' federal claims must and are hereby DISMISSED, with prejudice.

Having dismissed all of plaintiffs' federal claims against the defendants, the Court will not exercise supplemental jurisdiction.  Therefore, the Court DISMISSES without prejudice plaintiffs' supplemental claims under the Constitution and laws of Puerto Rico.

Accordingly, defendants' Motion to Dismiss (**docket entry 10**) is GRANTED. Judgment shall be entered dismissing all federal claims with prejudice, and the state law claims without prejudice.

SO ORDERED.

At San Juan, Puerto Rico, on September 30, 2010.


                                    S/CARMEN CONSUELO CEREZO
                                     United States District Judge